```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```

STEVEN D. BUSH, JR.,

                Petitioner,

    -vs-

ROBERT A. KIRKPATRICK,

                Respondent.
_____

**DECISION AND ORDER**
**No. 06-CV-0771T**

**I.   Introduction**

*Pro se* Petitioner, Steven D. Bush, Jr. ("Petitioner"), has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered February 11, 2002, in New York State, County Court, Chautauqua County, convicting him, after a jury trial, of Murder in the Second Degree (N.Y. Penal Law ("Penal Law") § 120.20), and Robbery in the Second Degree (Penal Law § 120.10[1]).

For the reasons stated below, the writ is denied and the petition is dismissed.

**II.   Factual Background and Procedural History**

On the night of December 7, 2000, Petitioner and Nick Osman ("Osman") called a cab to pick them up from Petitioner's house, where they had been drinking beer and playing cards. Trial Transcript [T.T.] 38-42, 59-62, 983-85. During the cab ride, Petitioner and Osman attacked the cab driver, punching him repeatedly in the head. The cab driver jumped out of the cab and

ran into the woods.  T.T. 97-98, 101, 107-14.  Petitioner began driving the cab, while Osman rode in the passenger's seat.  It was snowing heavily that night, and Petitioner lost control of the cab, causing it to veer into a ditch.  Petitioner and Osman got out of the cab and stood on the side of the road, drinking beer.  Another car approached and when the driver, Robert Olds ("Olds" or "the victim"), stopped and rolled down his window, Osman began punching him in the face.  Olds attempted to drive away, but his car spun out of control and landed in the ditch on the opposite side of the road.  Petitioner and Osman followed the car, began screaming at Olds, resumed punching Olds, and attempted to pull Olds from his car.  Once Olds was out of the car, Petitioner and Osman beat him to death with a tree branch.  Petitioner and Osman then fled the scene and were apprehended by police the following day.  While in police custody, Petitioner gave a statement to police, wherein he recounted the events of December 7, 2000, but indicated that he did not intend to kill Olds.  T.T. 370-89, 422-29.

Petitioner and Osman were charged by a Chautauqua County Grand Jury with Murder in the Second Degree and Robbery in the Second Degree.  Petitioner and Osman were tried separately.

Prior to trial, Petitioner moved to suppress the statements he made to police following his arrest.  A pre-trial Huntley[1] hearing

---

[1] People v. Huntley, 15 N.Y.2d 72 (1965) (trial court must conduct pretrial hearing to determine voluntariness of defendant's statements to be used as evidence at trial).

was held on November 27, 2001. The trial court denied Petitioner's motion. Hearing Minutes [H.M.] of 11/27/01, 55-56.

On December 4, 2001, a jury trial was held before Justice John T. Ward, and Petitioner was found guilty as charged.

Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department, which was unanimously affirmed. People v. Bush, 23 A.D.3d 1066 (4th Dep't. 2005). Leave to appeal to the New York State Court of Appeals was denied. People v. Bush, 6 N.Y.3d 752 (2005).

No post-conviction motions were filed.

This habeas corpus petition followed.

### III. General Principles Applicable to Habeas Review

#### A. The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by

[the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.  Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

## IV. Petitioner's Claims

### 1. TRIAL COURT ERRED IN DENYING PETITIONER'S MOTION TO SUPPRESS HIS STATEMENTS

Petitioner argues that the trial court erred in denying his motion to suppress the statements he made to police regarding his involvement in the crime. In particular, he contends that his statements should have been suppressed because: (1) he invoked his right to counsel during the police interrogation; and (2) the police "tricked" and "cajoled" him by telling him that Osman was making a statement to police that implicated him, when Osman had invoked his right to counsel and was not speaking with police. Petition [Pet.] ¶22A, B. Petitioner raised these claims on direct appeal, and the Appellate Division, rejected them on the merits.[2]

The following facts were established at the pre-trial <u>Huntley</u> hearing: that Sergeant Peter Pett ("Pett") took Petitioner into custody on the morning of December 8, 2000 and subsequently interviewed him; that, upon entering the room where Petitioner was waiting, Pett instructed Petitioner not to say anything until he explained Petitioner's rights; that Pett then read Petitioner his <u>Miranda</u> warnings and Petitioner signed the <u>Miranda</u> card, indicating he understood these rights and wished to speak to police; that Pett then questioned Petitioner for approximately two hours and

---

[2] The Appellate Division found that: "[c]ontrary to the contention of defendant, County Court properly refused to suppress his written statement that he gave to the police. The record of the suppression hearing does not support the contention of defendant that he made an unequivocal request for counsel during questioning." <u>Bush</u>, 23 A.D.3d at 1066.

thirty minutes, stopping several times to get Petitioner food, coffee, and cigarettes; that, at some point during the interview, Pett told Petitioner that Osman was making a statement to police implicating Petitioner, although Pett knew Osman had invoked his right to counsel and was not speaking with police; that approximately one-third of the way through the interview, Petitioner inquired, "I wonder if I need an attorney"; that, in response, Pett indicated to Petitioner that he was entitled to a lawyer, but if he asked for one, Pett could not resume questioning Petitioner; that Petitioner then indicated to Pett that he wished to continue making his statement; that, as a result of the interview, Pett created a written statement, which Petitioner reviewed, amended and signed; and that after this written statement had been prepared, Pett again advised Petitioner of the Miranda warnings and, again, Petitioner indicated that he understood his rights and wished to continue to speak to police. H.M. 2-54.

These factual findings about what transpired between Petitioner and the police are supported by the record at the suppression hearing and are presumed to be correct. See 28 U.S.C. § 2254(e)(1). Moreover, Petitioner does not dispute these facts and has not rebutted them by the requisite clear and convincing evidence.

The Court now turns to an individual analysis of each of Petitioner's claims, which arise from the same factual core, but

pose distinct legal questions.

## THE RIGHT TO COUNSEL

Miranda v. Arizona, 384 U.S. 436 (1966) requires that an individual who is in custody must be advised of certain rights, including the right to have an attorney present during questioning, before he is interrogated by government agents. Law enforcement officers must immediately cease questioning a suspect who has clearly asserted his right to have counsel present during custodial interrogation. See Davis v. United States, 512 U.S. 452 (1994); Edwards v. Arizona, 451 U.S. 477 (1981); Diaz v. Senkowski, 76 F.3d 61, 64 (2d Cir. 1996); United States v. Berkovich, 932 F. Supp. 582 (S.D.N.Y. 1996). To cut off questioning after being advised of his rights, the defendant must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis, 512 U.S. at 459; see also Diaz, 76 F.3d at 64-65. An ambiguous or equivocal reference to an attorney that would cause a reasonable officer only to suspect that the defendant might be invoking the right to counsel does not require the cessation of questioning. See Davis, 512 U.S. at 459; Diaz, 76 F.3d at 64. "If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." Davis, 512 U.S. at 461-62.

Whether a criminal defendant unequivocally invoked his right

to counsel is a mixed question of law and fact -- what the defendant said and the circumstances under which he said it are questions of fact, and whether the words that were said constituted an unequivocal request for counsel under the circumstances is a question of law.  See, e.g., United States v. Oba, 978 F.2d 1123, 1129 (9th Cir. 1992) (holding that Court would review de novo whether the words used by the defendant constituted a request for counsel); Robinson v. Borg, 918 F.2d 1387, 1390 (9th Cir. 1990) ("The state court's determination of what is said during an interrogation constitutes a factual finding entitled to a presumption of correctness under 28 U.S.C. § 2254(d) . . . . Whether the suspect's words constitute a request for counsel is a legal determination which we review de novo.") (internal citations omitted), cert. denied, 502 U.S. 868 (1991); Lord v. Duckworth, 29 F.3d 1216, 1220 (7th Cir. 1994) (noting that a state court's conclusion concerning whether a suspect invoked his Miranda rights is reviewed as a question of fact).

A federal court reviewing a mixed question of law and fact in a § 2254 habeas petition may grant the petition only if "the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254 (d)(1); see Rodriguez v. Bennett, 1998 U.S. Dist. LEXIS 17274, *8 (S.D.N.Y. Nov. 2, 1998) (holding

that "subsection (d)(1) [of § 2254] defines the standard of review to be applied to questions of law and mixed questions of law and fact"); Ramirez v. Senkowski, 7 F. Supp. 2d 180, 191 (E.D.N.Y. 1998) (finding that "a Federal habeas court faced with a mixed question of law and fact decided by the State court should decline to issue the writ unless the State trial and appellate courts have unreasonably applied constitutional principles clearly established by the Supreme Court"); see also Davis v. Johnson, 158 F.3d 806, 812 (5th Cir. 1998) (finding that when reviewing a mixed question of law and fact under AEDPA, "a federal court will not disturb a state court's application of law to facts unless the state court's conclusions involved an unreasonable application of clearly established federal law as determined by the Supreme Court").

As previously stated, Petitioner does not challenge the state court's findings of fact. Thus, the issue before this Court is whether the suppression court's determination, as affirmed by the Appellate Division, that Petitioner's request for counsel was not unequivocal was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. The Court finds it was not. As the state court reasonably found, Petitioner's rhetorical-like statement, "I wonder if I need an attorney," was an ambiguous inquiry, and did not suffice to invoke his right to counsel. Furthermore, after making this vague inquiry and being advised by Pett that if he called an attorney he

could no longer speak to police, Petitioner indicated to Pett that he wished to continue speaking with police. "If a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, [Supreme Court] precedents do not require the cessation of questioning." Davis, 512 U.S. at 459; see also Flamer v. Delaware, 68 F.3d 710, 725 (3d Cir. 1995) (finding that Flamer's request to call his mother 'to inquire about . . . possible representation' . . . was insufficient to trigger Edwards under the Supreme Court's decision in Davis because it was not sufficiently unambiguous), cert. denied, 516 U.S. 1088 (1996); Diaz, 76 F.3d at 63-64 (finding suspect's question during interrogation, "Do you think I should talk to a lawyer?" did not serve to invoke the right to counsel); Mastin v. Senkowski, 297 F.Supp.2d 558, 592-93 n.14 (W.D.N.Y. Nov. 4, 2003) (finding suspect's question during interrogation of whether police officer thought he should have an attorney was "not sufficiently clear request for counsel"); Thompson v. Fischer, 02-CV-0526, 2003 U.S. Dist. LEXIS 24375, *45-46 (E.D.N.Y. Nov. 13, 2003) (finding suspect's questioning during interrogation, "Should I call my lawyer?" was insufficient to invoke the right to counsel).

Accordingly, the Court cannot find that the state court's determination of this issue, as affirmed by the Appellate Division,

was contrary to or an unreasonable application of settled Supreme Court law. The claim is dismissed.

## VOLUNTARINESS OF STATEMENT

Petitioner also contends that his statement was involuntary because he was deceived by police officers. This claim fails as well.

The "ultimate issue of voluntariness [of a confession] is a legal question requiring independent federal determination." Nelson v. Walker, 121 F.3d 828, 833 (2d Cir.1997) (quoting Arizona v. Fulminante, 499 U.S. 279, 287 (1991)); see also Nova v. Bartlett, 211 F.3d 705, 707 (2d Cir. 2000); Mincey v. Arizona, 437 U.S. 385, 398 (1978) (holding that the Court is not bound by a state court's determination that a statement was voluntary; instead, the Court is under a duty to make an independent evaluation of the record). "'No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances.'" Nelson, 121 F.3d at 833 (quoting Green v. Scully, 850 F.2d 894, 901 (2d Cir.), cert. denied, 488 U.S. 945 (1988)). Factors to be considered include the accused's experience and education; the conditions of the interrogation; and the conduct of law enforcement officials, notably, whether there was physical abuse, the period of restraint in handcuffs, and use of psychologically coercive tactics. Id.

(citing Green, 850 F.2d at 901). "'Subsidiary questions, such as the length and circumstances of [an] interrogation," or whether "'the police engaged in the intimidation tactics alleged by the defendant," are entitled to the presumption of correctness.'" Id. (quoting Miller v. Fenton, 474 U.S. 104, 112, 117 (1985) ); see also Towndrow v. Kelly, 98-CV-0509, 2000 U.S. Dist. LEXIS 21969 (N.D.N.Y. Dec. 20, 2000) (factual findings relevant to the voluntariness of a habeas petitioner's confession made by the state court are entitled to the presumption of correctness, and a petitioner must rebut this presumption by clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

Again, Petitioner does not challenge the state court's findings of fact regarding the ruse employed by Pett. Rather, Petitioner contends that Pett's falsehood -- that Osman was speaking with police and had made a statement implicating Petitioner when, in fact, he had invoked his right to counsel and was not -- was so fundamentally unfair that it rendered his statements involuntary. Pet. ¶22B. "'Trickery, deceit, even impersonation do not render a confession inadmissible . . . unless government agents make threats or promises.'" United States v. Crawford, 372 F.3d 1048, 1060-61 (9th Cir. 2004) (quoting United States v. Kontny, 238 F.3d 815, 817 (7th Cir. 2001) (in turn citing Frazier v. Cupp, 394 U.S. 731, 739, 22 L. Ed. 2d 684, 89 S. Ct. 1420 (1969)); see also United States v. Orso, 266 F.3d 1030, 1039

(9th Cir. 2001) (en banc) (holding that an investigator's misrepresentation that a piece of evidence existed, while reprehensible, does not constitute coercive conduct); Clanton v. Cooper, 129 F.3d 1147, 1158 (10th Cir. 1997) (holding that a confession was voluntary despite the fact that an officer falsely told the defendant that physical evidence connected him to the crime); McNeal v. Rdo, No. 88 Civ. 3435, 1988 U.S. Dist. LEXIS 11666 (S.D.N.Y. Oct. 6, 1988) (holding that petitioner was not improperly induced to confess by police officer's attempt to convince him that the polygraph machine was infallible), cert. denied, 493 U.S. 1030 (1990); Miller, 796 F.2d at 598 (3d Cir.) (finding that lie about time of victim's death not "sufficient trickery" to overcome defendant's will), cert. denied, 479 U.S. 989 (1986)); accord Mastin, 297 F. Supp.2d at 603 (W.D.N.Y. Nov. 4, 2003).

Indeed, Pett used a deceptive tactic to induce Petitioner to give a statement by falsely leading him to believe that Osman was speaking with police and that Osman was making a statement that implicated Petitioner. H.M. 38. However, Pett's statement was not accompanied by a coercive threat or promise of leniency which could have overborne Petitioner's free will. Compare Lynumn v. Illinois, 372 U.S. 528, 534 (1963) ("It is thus abundantly clear that the petitioner's oral confession was made only after the police had told her that state financial aid for her infant children would be

cut off, and her children taken from her, if she did not 'cooperate.' These threats were made while she was encircled in her apartment by three police officers and a twice convicted felon who had purportedly 'set her up.' There was no friend or adviser to whom she might turn. She had had no previous experience with the criminal law, and had no reason not to believe that the police had ample power to carry out their threats."). Rather, Petitioner's choice to confess to participating in the robbery and murder was a voluntary and unconstrained personal choice based on his understanding of the facts and circumstances at the time. That one of these facts -- among various others -- was false does not undermine the voluntary nature of his statement to police. Looking at the totality of the circumstances, as precedent dictates, see, e.g., Nelson, 121 F.3d at 833, the Court concludes that Petitioner's waiver of his constitutional rights and subsequent statement were the result of his free will and choice.

Thus, the claim is dismissed.

### 2. HARSH AND SEVERE SENTENCE

Petitioner contends that his sentence was "unduly" harsh and severe because he received the maximum sentence on both counts. Pet. ¶22C. Although the claim was raised on direct appeal and properly exhausted, it does not present an issue that is cognizable by this Court on habeas review.

It is well-settled that a habeas petitioner's challenge to the

length of his prison term does not present a cognizable constitutional issue if the sentence falls within the statutory range. Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.") (citing Underwood v. Kelly, 692 F.Supp 146 (E.D.N.Y. 1988), aff' mem., 875 F.2d 857 (2d Cir. 1989)); accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion). Because Petitioner's sentence falls within the permissible statutory range, he may not challenge the length of the sentence in his petition.

Under New York's sentencing scheme, a conviction for second degree murder carries a maximum possible term of imprisonment of from twenty-five years to life. Penal Law §§ 125.25[1], 70.00. A conviction for second degree robbery carries a maximum possible term of imprisonment of five to fifteen years. Penal Law §§ 160.10, 70.00. Here, Petitioner received the maximum term of imprisonment for each count.

Thus, the claim does not present an issue that is cognizable by this Court, and habeas relief is denied.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

    s/Michael A. Telesca
HON. MICHAEL A. TELESCA
United States District Judge

DATED:    January 28, 2010
           Rochester, New York